**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| GUSTAVO OLMETA, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>HYLIION HOLDINGS CORP., THOMAS HEALY, and JON PANZER,<br><br>Defendants. | Case No. 1:26-cv-2375<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**CLASS ACTION**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Gustavo Olmeta ("Plaintiff"), individually and on behalf of all other persons similarly situated, by his undersigned attorneys, alleges in this Complaint for violations of the federal securities laws (the "Complaint") the following based upon knowledge with respect to his own acts, and upon facts obtained through an investigation conducted by his counsel, which included, *inter alia*: (a) review and analysis of relevant filings made by Hyliion Holdings Corp. ("Hyliion" or the "Company") with the United States Securities and Exchange Commission (the "SEC"); (b) review and analysis of Hyliion's public documents, conference calls, press releases, and stock chart; (c) review and analysis of securities analysts' reports and advisories concerning the Company; and (d) information readily obtainable on the internet.

Plaintiff believes that further substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery. Most of the facts supporting the allegations contained herein are known only to the defendants or are exclusively within their control.

## NATURE OF THE ACTION

1. This is a federal securities class action on behalf of all investors who purchased or otherwise acquired Hyliion common stock between May 12, 2026 to June 23, 2026, inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities. (the "Class").

2. Defendants provided investors with material information concerning Hyliion's financial growth and stability. Defendants' statements included, among other things, confidence in Hyliion's "new data center partnership" with VFG Holdings ("VFG") to pursue the deployment of up to 250 KARNO Cores over the next five years, representing approximately one-third of Hyliion's more than $400 million in disclosed potential revenue from non-binding letters of intent ("LOI"). Moreover, Defendants announced positive Q1 2026 financial results and reaffirmed its prior guidance highlighting completion of UL certification for the KARNO Power Module, while continuing to tout its commercial pipeline, despite having any material information concerning the credibility of VFG's ability to finance, develop and perform under the proposed partnership.

3. Defendants provided these overwhelmingly positive statements to investors while, at the same time, disseminating materially false and misleading statements and/or omitting material facts concerning the credibility of its announced commercial pipeline, notably, the basis for management's confidence in its VFG partnership and the extent of the Company's evaluation of VFG's operational capabilities, financial resources, and ability to perform before announcing the "new data center partnership" as a significant commercial opportunity. Such statements absent these material facts caused Plaintiff and other shareholders to purchase Hyliion's securities at artificially inflated prices.

4. The truth emerged on June 23, 2026, when Pelican Way Research issued a research report questioning the commercial viability of Hyliion's announced partnership with VFG. Specifically, the report raised numerous red flags regarding VFG's operational capabilities, financial resources, and development experience necessary to execute the approximately $133 million proposed transaction.

5. Investors and analysts reacted immediately to the news. The price of Hyliion's common stock declined from a closing market price of $7.37 per share on June 22, 2026, to $6.10 per share on June 23, 2026, a decline of about 17%. The stock price continued to decline another 19% to $4.92 per share on June 24, 2026, as the market continued to absorb the news.

## JURISDICTION AND VENUE

6. Plaintiff brings this action, on behalf of himself and other similarly situated investors, to recover losses sustained in connection with Defendants' fraud.

7. The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

8. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§1331 and 1337, and Section 27 of the Exchange Act, 15 U.S.C. §78aa.

9. Venue is proper in this District pursuant to §27 of the Exchange Act and 28 U.S.C. §1391(b), as Defendant Hyliion is headquartered in this District and a significant portion of its business, actions, and the subsequent damages to Plaintiff and the Class, took place within this District.

10. In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce,

including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

**THE PARTIES**

11. Plaintiff purchased Hyliion common stock at artificially inflated prices during the Class Period and was damaged upon the revelation of the Defendants' fraud. Plaintiff's certification evidencing his transaction(s) in Hyliion is attached hereto.

12. Hyliion Holdings Corp. is a Delaware corporation with its principal executive offices located at 1202 BMC Drive, Suite 100, Cedar Park, TX 78613. During the Class Period, the Company's common stock traded on the New York Stock Exchange (the "NYSE") under the symbol "HYLN."

13. Defendant Thomas Healy ("Healy") was, at all relevant times, the Chief Executive Officer of Hyliion.

14. Defendant Jon Panzer ("Panzer") was, at all relevant times, the Chief Financial Officer of Hyliion.

15. Defendants Healy and Panzer are sometimes referred to herein as the "Individual Defendants." Hyliion together with the Individual Defendants are referred to herein as the "Defendants."

16. The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of Hyliion's reports to the SEC, press releases, and presentations to securities analysts, money and portfolio managers, and institutional investors, *i.e.*, the market. Each Individual Defendant was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their

positions and access to material non-public information available to them, each of these Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading. The Individual Defendants are liable for the false statements pleaded herein, as those statements were each "group-published" information, the result of the collective actions of the Individual Defendants.

17. Hyliion is liable for the acts of the Individual Defendants, and its employees under the doctrine of respondeat superior and common law principles of agency as all the wrongful acts complained of herein were carried out within the scope of their employment with authorization.

18. The scienter of the Individual Defendants, and other employees and agents of the Company are similarly imputed to Hyliion under respondeat superior and agency principles.

## SUBSTANTIVE ALLEGATIONS

### ***Background***

19. Hyliion designs and develops power generators for stationary and mobile applications. Its primary product includes the KARNO Power Module, a fuel-agnostic power generating solution, which enables distributed power generation using conventional fuels, waste fuels, and zero carbon fuels.

### ***The Defendants Materially Misled Investors Concerning the Credibility of Hyliion's Commercial Pipeline and VFG Partnership***

*May 12, 2026*

20. On May 12, 2026, Defendants published their first quarter 2026 financial results, highlighting, in pertinent part:

> ***Hyliion successfully completed the non-recurring UL certification testing of the KARNO Power Module, removing a key gating item for delivering early adopter units to customer sites.*** The testing covered three subsystems: the linear electric

motor, the battery system, and the complete Power Module, with each undergoing separate UL certification.

. . .

***Hyliion remains on track to complete deployment of the approximately 10 early adopter units during 2026 and commercialize the KARNO Power Module by year end.*** With UL non-recurring testing now complete, Hyliion will begin transitioning units to customer sites over the next couple of quarters.

***Hyliion and VFG Holdings, LLC entered into a non-binding Letter of Intent ("LOI") establishing a strategic partnership focused on deploying KARNO Power Modules for advanced next-generation data center applications. The parties intend to pursue deployment opportunities totaling up to 250 KARNO Cores, or 50 megawatts of power generation capacity, over the next five years. VFG develops turnkey data center solutions, including power infrastructure, compute systems, site development, and financing. The parties expect to provide additional updates regarding the collaboration and initial deployment opportunities in future periods.***

. . .

***Hyliion recorded first-quarter 2026 revenue of $2.8 million from research and development services, compared to $0.5 million in the first quarter of 2025 and $0.7 million in the fourth quarter of 2025.*** The significant growth reflects an acceleration of work under the company's contracts with the Office of Naval Research, including the build of the 800-kilowatt KARNO Power Module being delivered for the Navy. Cost of revenues was $2.6 million, resulting in a gross margin gain of $0.2 million for the quarter.

. . .

***Looking ahead to the balance of 2026, Hyliion is reaffirming its prior guidance of approximately $10 million in full-year revenue*** from R&D services and potential initial commercial customer sales following commercialization of the 200-kilowatt KARNO Power Module, which is expected late in the year.

(Emphasis added).

21. As part of the press release, Defendant Healy, the Founder and Chief Executive Officer of Hyliion, touted the potential for Hyliion's commercial partnerships in 2026, highlighting its VFG partnership, stating, in pertinent part, as follows:

***The first quarter delivered tangible progress against the deployment-and-commercialization plan we outlined for 2026, including completion of UL non-recurring testing on the KARNO Power Module, a new data center partnership with VFG Holdings, demonstrated multi-fuel flexibility, and four times the revenue of the prior quarter.*** Our focus for the balance of the year remains on execution as we work toward commercialization of the KARNO Power Module by year end.

(Emphasis added).

22. During the accompanying earnings call, Defendant Healy, CEO of Hyliion, touted the Company's commercialization progress and significant pipeline of future revenue opportunities, continually highlighting the strategic partnership with VFG, stating, in pertinent part:

> ***We successfully completed the UL Certification non-recurring test milestone for the KARNO Power Module. We signed a new data center partnership with VFG Holdings, broadened our military engagement and further demonstrated multi-fuel flexibility.*** We also saw a significant increase in revenue growth, recording $2.8 million this quarter, a fourfold increase from the prior quarter.
>
> . . .
>
> ***We are also seeing strong and growing demand from data center customers. The need for on-site fuel flexible power generation is becoming increasingly important, and we are actively engaging with the leading players in the market. In that context, I am pleased to announce a new strategic partnership with VFG Holdings. Hyliion and VFG holdings have executed a nonbinding letter of intent, to deploy up to 250 KARNO cores or approximately 50-megawatts of power over the next 5 years. VFG is a developer of advanced next-generation data centers and offers turnkey solutions, including power, infrastructure, compute and financing. The team at VFG is comprised of industry veterans from some of the largest data center companies and is planning multiple gigawatts of power production in the years ahead. Under this partnership, the parties plan to deploy KARNO Power Modules at VFG's data center sites to demonstrate the unique benefits of the KARNO platform, including lower-than-grid electricity production costs true fuel-agnostic operation and direct 800-volt DC integration. We plan to share more details on the partnership in the periods ahead. The LOI between Hyliion and VFG is subject to the execution of a definitive purchase agreement.***
>
> . . .
>
> ***We completed UL Nonrecurring Testing, signed a meaningful data center partnership with VFG and generated 4x the revenue of the prior quarter.*** We also broadened our engagement across the U.S. military, demonstrated true multi-fuel flexibility and commenced the build of our first 800-kilowatt Navy system. The themes we identified last quarter, namely the shift toward 800-volt DC architecture in next-generation AI data centers and the demand for resilient mission-critical power across the U.S. military became more tangible in the first quarter. ***The VFG partnership positions us within the next-generation data center deployments where 800-volt DC-native operation is a clear architectural advantage, while***

> ***expanding military engagements reflect strong demand for the platform's differentiated capabilities.***

(Emphasis added).

23. During the same earnings call, Defendant Panzer, CFO of Hyliion, highlighted Hyliion's financial strength, noting that the Company had sufficient capital to fund commercialization of the KARNO Power Module and future growth, stating, in relevant part:

> ***Overall, for 2026, higher revenue, expense control, lower capital spending and planned equipment financing are expected to result in a lower level of total spending compared to 2025.*** Our current forecast is for net spending of just over $50 million during the year, resulting in a year-end cash and investment balance of approximately $100 million. ***We continue to believe that the capital we have on hand today is sufficient to carry us through commercialization of the KARNO Power Module. Also, we anticipate additional capital will eventually be required to support production growth particularly for the purchase of additional additive manufacturing equipment to more rapidly ramp up production in future years.***

(Emphasis added).

24. During the question-and-answer segment that followed, Defendants emphasized Hyliion's expanding commercial pipeline and growing data center customer demand, specifically identifying VFG as a key commercial opportunity, in the following pertinent exchanges:

> <Q: Edward Randolph Jackson – Northland Capital Markets, Research Division – MD & Senior Research Analyst> You assigned a contract with VFG or an LOI with VFG, which really expanded your pipeline in terms of our backlog or whatever you want to call it, in terms of KARNO units that are under LOI. Is there any time between those two? Or are they mutually exclusive? And I guess, where I'm going with it is, given the relationship with VFG and what they do, I mean, is that where you are looking at perhaps putting some of these units where you're wanting to have them for data center or potential data center customers to kind of kick around?

> <A: Thomas Healy> Data centers are actually in the problems of neighbors complaining about how loud systems are. And so when people get to experience the product, see it firsthand, see the -- how easy it is to operate and how simple it is, you truly just feed fuel in and you're going to get electrons out. The product in a lot of ways, sells itself. ***And so from that end, whether it's with VFG or other data centers, just yesterday, another data center provider was in and they were talking about let's take a system, put it in their like AI test facility. All these data center providers have not only the true data centers, the building, they also have***

> ***facilities where they're testing new technologies, new architectures like the 800-volt. And so they want to get systems deployed and really prove out the use cases we're talking about.***
>
> . . .
>
> <Q: Edward Randolph Jackson – Northland Capital Markets, Research Division – MD & Senior Research Analyst > The next question is, you're talking about '27 being the year of kind of ramp and '28 and that you have capacity to handle what you view as your needs until you kind of get through '28. Can you perhaps give us some kind of sense with regards to what you think your current capacity level is -- or there some kind of range in terms of kind of what your capacity level will be in '27? I mean, I assume we're talking units and just -- it doesn't have to be exact, I mean, maybe kind of like a lower to high just kind of frame out what we could think of in terms of your ability to produce KARNO?
>
> <A: Thomas Healy> So I'll start with apologizing. ***We're not ready to share that just yet. We do anticipate later this year, we'll start leaning in and share more on what we expect capacity for next year and the year after to be. But we obviously are expecting growth behind it. The reason that we don't want to lean in just yet and share those expected numbers is because we want to see how these initial units go when we get them out to customer sites.***
>
> (Emphasis added).

25. In his closing remarks, Defendant Healy continued to tout its partnership with VFG as a significant contributor to its commercial pipeline, stating, in relevant part:

> Hope you can see a lot of excitement on our end, a huge milestone for us to get through that UL Certification testing. It's been something we've been talking about for a few quarters now. ***Obviously, excited about the collaboration with VFG and moving the signed LOIs, nonbinding LOIs to a potential of about $400 million of revenue at today's current pricing.*** And then we talked about a lot as well the opportunities ahead of us with the military and excited to get those $40 million to $50 million of contracts signed and executed.
>
> (Emphasis added).

26. The above statements in Paragraphs 20 to 25 were false and/or materially misleading. Defendants created the false impression that they possessed reliable information pertaining to the Company's commercial strategy and quality of its announced pipeline and remained confident in its growth prospects for fiscal year 2026, while omitting material facts concerning the credibility and commercial viability of its "new data center partnership" with VFG

over the next five years, representing approximately one-third of Hyliion's more than $400 million in disclosed potential revenue. In truth, Hyliion failed to disclose material information concerning the basis of its VFG partnership, including whether VFG possessed the operational capabilities, financial resources and development experience to support the deployment of up to 250 KARNO Cores.

**The Truth Emerges**

*June 23, 2026*

27. On June 23, 2026, Pelican Way Research published a research report on Hyliion questioning the credibility of the Company's commercial pipeline, in particular its LOI with VFG Holdings which represented approximately $133 million in potential revenue, roughly one-third of Hyliion's reported $400 commercial pipeline. The report pointed to the lack of transparency surrounding the VFG partnership and questioned the validity of the remaining pipeline due to limited public disclosures as to the purported commercial opportunities.

28. Based on their findings, the Pelican Way Research discovered that VFG was a newly formed entity, only recently incorporated on January 5, 2026, and appeared to have only "4 employees" while maintaining a "barely functioning website." Further, the report claimed that VFG did not possess the operational and financial capacity to support the proposed partnership with Hyliion, noting the lack of any public information, i.e. Pitchbook funding data or other funding history for VFG.

29. The Pelican Way Research report concluded that Hyliion's purported commercial pipeline, specifically the LOI with VFG was materially overstated and the Company failed to disclose material information regarding VFG's ability to support the proposed $133 million opportunity.

30. The information contained in the Pelican Way Research report contradicted the statements made by Defendants in the press release and associated earnings call held on May 12, 2026 and May 13, 2026. On that call, Defendants continually touted the Company's expanding commercial pipeline and strategic partnerships, highlighting the VFG "new data center partnership" as a significant commercial opportunity. In actuality, Hyliion failed to disclose material information concerning the basis of its VFG partnership, including whether VFG possessed the operational capabilities, financial resources and development experience to support the deployment of up to 250 KARNO Cores.

31. Investors and analysts reacted immediately to the news. The price of Hyliion's common stock declined from a closing market price of $7.37 per share on June 22, 2026, to $6.10 per share on June 23, 2026, a decline of about 17%. The stock price continued to decline another 19% to $4.92 per share on June 24, 2026, as the market continued to absorb the news.

32. Following the June 23, 2026 Pelican Way Research report, Defendants held their second quarter 2026 earnings call on August 12, 2026. Notably, Defendants did not publicly rebut or even address the allegations made in the research report, but continued to tout the strength of HYLN's customer demand and commercial pipeline. Specifically, Defendant Healy emphasized strong customer interest in HYLN's data center market and raised the Company's "revenue guidance for 2026 by 50% from $10 million to about $15 million," while acknowledging that "[m]ost of the interest we are hearing from customers is not yet reflected in LOIs or purchase contracts," thereby showing that much of the claimed demand remained potential and was not backed by binding customer commitments.

### *Additional Scienter Allegations*

33. During the Class Period, Defendants acted with scienter in that they knew, should have known, or otherwise were deliberately reckless in not knowing that the public statements disseminated on behalf of Hyliion were materially false and misleading at the time they were made. Defendants had actual knowledge of, or access to, non-public information concerning the Company's evaluation of VFG, the commercial credibility of the VFG partnership, and the basis for promoting the VFG LOI as a significant component of Hyliion's commercial pipeline and growth strategy.

34. Notwithstanding such, Defendants repeatedly and affirmatively represented to investors that Hyliion's commercial pipeline was credible and moving toward expansion, while failing to disclose material information concerning the basis for management's confidence in VFG, extent of the Company's diligence, and VFG's ability to support the proposed transaction.

35. Defendants' scienter was further evidenced by their actions following the June 23, 2026 research report. Despite the research report's allegations, Defendants never made any public statements rebutting the allegations and continued making positive statements about the Company's data center market and increased revenue guidance for 2026, while simultaneously acknowledging that much of the demand had not translated into LOIs or purchase contracts.

### *Loss Causation and Economic Loss*

36. During the Class Period, as detailed herein, Defendants made materially false and misleading statements and engaged in a scheme to deceive the market and a course of conduct that artificially inflated the price of Hyliion's common stock and operated as a fraud or deceit on Class Period purchasers of Hyliion's common stock by materially misleading the investing public. Later, Defendants' prior misrepresentations and fraudulent conduct became apparent to the market, the

price of Hyliion's common stock materially declined, as the prior artificial inflation came out of the price over time. As a result of their purchases of Hyliion's common stock during the Class Period, Plaintiff and other members of the Class suffered economic loss, *i.e.*, damages under federal securities laws.

37. Hyliion's stock price fell in response to the corrective event on June 23, 2026, as alleged *supra*. On June 23, 2026, information emerged that was directly related to their prior misrepresentations and material omissions concerning Hyliion's financial growth and stability.

38. In particular, on June 23, 2026, Pelican Way Research published a research report that Hyliion's purported commercial pipeline, specifically the LOI with VFG was materially overstated and the Company failed to disclose material information regarding VFG's ability to support the proposed $133 million opportunity.

***Presumption of Reliance; Fraud-On-The-Market***

39. At all relevant times, the market for Hyliion's common stock was an efficient market for the following reasons, among others:

(a) Hyliion's common stock met the requirements for listing and was listed and actively traded on the NYSE during the Class Period, a highly efficient and automated market;

(b) Hyliion communicated with public investors via established market communication mechanisms, including disseminations of press releases on the national circuits of major newswire services and other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services;

(c) Hyliion was followed by several securities analysts employed by major brokerage firms who wrote reports that were distributed to the sales force and certain customers of their

respective brokerage firms during the Class Period. Each of these reports was publicly available and entered the public marketplace; and

(d) Unexpected material news about Hyliion was reflected in and incorporated into the Company's stock price during the Class Period.

40. As a result of the foregoing, the market for Hyliion's common stock promptly digested current information regarding the Company from all publicly available sources and reflected such information in Hyliion's stock price. Under these circumstances, all purchasers of Hyliion's common stock during the Class Period suffered similar injury through their purchase of Hyliion's common stock at artificially inflated prices, and a presumption of reliance applies.

41. Alternatively, reliance need not be proven in this action because the action involves omissions and deficient disclosures. Positive proof of reliance is not a prerequisite to recovery pursuant to ruling of the United States Supreme Court in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972). All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered the omitted information important in deciding whether to buy or sell the subject security.

***No Safe Harbor; Inapplicability of Bespeaks Caution Doctrine***

42. The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the material misrepresentations and omissions alleged in this Complaint. As alleged above, Defendants' liability stems from the fact that they provided investors with materially misleading statements about the commercial viability of Hyliion's announced VFG partnership, including the significance of the non-binding LOI and the role it played in supporting the Company's projected growth opportunities.

43. To the extent certain of the statements alleged to be misleading or inaccurate may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.

44. Defendants are also liable for any false or misleading "forward-looking statements" pleaded because, at the time each "forward-looking statement" was made, the speaker knew the "forward-looking statement" was false or misleading and the "forward-looking statement" was authorized and/or approved by an executive officer of Hyliion who knew that the "forward-looking statement" was false. Alternatively, none of the historic or present-tense statements made by Defendants were assumptions underlying or relating to any plan, projection, or statement of future economic performance, as they were not stated to be such assumptions underlying or relating to any projection or statement of future economic performance when made, nor were any of the projections or forecasts made by the defendants expressly related to or stated to be dependent on those historic or present-tense statements when made.

## CLASS ACTION ALLEGATIONS

45. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Hyliion's common stock during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosure. Excluded from the Class are defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

46. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Hyliion's common stock were actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Hyliion or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions. As of May 7, 2026, there were 178.3 million shares of the Company's common stock outstanding. Upon information and belief, these shares are held by thousands, if not millions, of individuals located throughout the country and possibly the world. Joinder would be highly impracticable.

47. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

48. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

49. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a) whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b) whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Hyliion;

(c) whether the Individual Defendants caused Hyliion to issue false and misleading financial statements during the Class Period;

(d) whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

(e) whether the prices of Hyliion's common stock during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

(f) whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

50. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## **COUNT I**

### ***Against All Defendants for Violations of***
### ***Section 10(b) and Rule 10b-5 Promulgated Thereunder***

51. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

52. This Count is asserted against defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

53. During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon. Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities. Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Hyliion common stock; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Hyliion's securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

54. Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Hyliion's securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about the Company.

55. By virtue of their positions at the Company, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose

such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants. Said acts and omissions of defendants were committed willfully or with reckless disregard for the truth. In addition, each defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

56. Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within defendants' knowledge and control. As the senior managers and/or directors of the Company, the Individual Defendants had knowledge of the details of Hyliion's internal affairs.

57. The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of the Company. As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Hyliion's businesses, operations, future financial condition and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Hyliion's common stock was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning the Company which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Hyliion's common stock at artificially inflated prices and relied upon the price of the common stock, the integrity of the market for the common stock and/or upon statements disseminated by Defendants, and were damaged thereby.

58. During the Class Period, Hyliion's common stock was traded on an active and efficient market. Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Hyliion's common stock at prices artificially inflated by defendants' wrongful conduct. Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said common stock, or would not have purchased or otherwise acquired them at the inflated prices that were paid. At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Hyliion's common stock was substantially lower than the prices paid by Plaintiff and the other members of the Class. The market price of Hyliion's common stock declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

59. By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

60. As a direct and proximate result of defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's common stock during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

***Against the Individual Defendants***
***for Violations of Section 20(a) of the Exchange Act***

61. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

62. During the Class Period, the Individual Defendants participated in the operation and management of the Company, and conducted and participated, directly and indirectly, in the conduct of the Company's business affairs. Because of their senior positions, they knew the adverse non-public information about Hyliion's misstatements.

63. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information, and to correct promptly any public statements issued by Hyliion which had become materially false or misleading.

64. Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Hyliion disseminated in the marketplace during the Class Period concerning the misrepresentations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Hyliion to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of the Company within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Hyliion's common stock.

65. Each of the Individual Defendants, therefore, acted as a controlling person of the Company. By reason of their senior management positions and/or being directors of the Company, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause Hyliion to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of the Company and possessed

the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

66. By reason of the above conduct, the Individual Defendants and/or Hyliion are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by the Company.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demand judgment against defendants as follows:

A. Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representatives;

B. Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C. Awarding Plaintiff and the other members of the Class pre-judgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D. Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: August 28, 2026

Respectfully submitted,

**SPONSEL MILLER PLLC**

*/s/ Thane Tyler Sponsel III*
Thane Tyler Sponsel III
Texas Bar No.: 24056361
520 Post Oak Boulevard, Suite 310
Houston, Texas 77027
Telephone: (713) 892-5400
Facsimile: (713) 892-5401
Email: sponsel@smglawgroup.com

*Liaison Counsel for Gustavo Olmeta*

**LEVI & KORSINSKY, LLP**
Adam M. Apton (*pro hac vice* forthcoming)
33 Whitehall Street, 27th Floor
New York, NY 10004
Tel.: (212) 363-7500
Fax: (212) 363-7171
Email: aapton@zlk.com

*Counsel for Gustavo Olmeta*